CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
September 16, 2026
LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **TOMMY JAMES GRAHAM, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. 7:24cv00096** |
| | ) | |
| **v.** | ) | **<u>OPINION AND ORDER</u>** |
| | ) | |
| **THOMPSON, et al.,** | ) | **By: Hon. Pamela Meade Sargent** |
| | ) | **United States Magistrate Judge** |
| **Defendants.** | ) | |

Plaintiff, Tommy James Graham, Jr., ("Graham"), a Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983, alleging that prison officials at Wallens Ridge State Prison, ("Wallens Ridge"), delayed his access to necessary medical care in violation of his constitutional rights. The trial of this matter was held on August 24 and 25, 2026, and the jury reached a verdict in favor of the remaining defendant, Lt. Thompson,[1] (Docket Item No. 180), and judgment was entered in accordance with the verdict, (Docket Item No. 183). Graham now timely moves the court to set aside the jury's verdict and order a new trial. ("Motion") (Docket Item Nos. 184, 185.)[2]

I.

During a fight with other inmates on the morning of October 5, 2023, Graham was hit with a nonlethal blunt impact projectile, resulting in injuries to his eye. He

[1] In addition to Thompson, Sgt. Wood initially proceeded to trial as a defendant, but he was released after the presentation of Graham's evidence when the court partially granted the defendants' oral motion for judgment as a matter of law. (Docket Item No. 183 at 2.)

[2] Although there are two motions filed at Docket Item Numbers 184 and 185, the motions appear to be duplicative and will be considered as one Motion. Graham simultaneously has filed a Notice of Appeal, (Docket Item No. 186), and the Fourth Circuit stated that it will treat the Notice of Appeal as filed as of the date this court disposes of the subject Motion. (Docket Item No. 188.)

then was evaluated by prison medical officials, who determined he would need to be treated at the local hospital. Two officers transported Graham from Wallens Ridge to Lonesome Pine Hospital in Big Stone Gap, Virginia. Graham claims that after the physician at Lonesome Pine Hospital concluded that he needed further evaluation and should be transferred to Carilion Roanoke Memorial Hospital, ("Carilion"), he overheard Thompson order the transportation officers to stall the transport while they were talking on speaker phone. Graham did not arrive to Carilion for treatment until later that night, but the defendants did not recall making statements regarding stalling the transport. Because the interference with or delay of Graham's medical care was a question of material fact, it was reserved for the jury.

Well before trial, and as early as October 2024, Graham had submitted multiple requests for discovery, which had been granted by the court to the extent his requests were proportionate to the needs of the case. After the court's partial denial of summary judgment, (Docket Item No. 104), a Trial Order was entered scheduling trial and setting final deadlines for any further discovery to be completed. (Docket Item No. 107.)

The matter proceeded to a two-day jury trial commencing on August 24, 2026, at which time Graham had the opportunity to testify and present the testimony of inmate Antonio Smith, transportation officer Casey Collins, Wood and Thompson in his case-in-chief. He also was permitted to cross-examine these witnesses as well as the defendant's remaining witness, nurse Rachel Harmon.

Graham asserts that, in preparation for trial, he relied on the defendants' Affidavits and responses to requests for admission[3] to develop a trial strategy. He

[3] Notably, the defendants' Affidavits were submitted with the defendants' Motion for Summary Judgment. (Docket Item No. 80.) However, the defendants' responses to Graham's

claims that "[a]t trial, however, Defendant Thompson testified, in substance, that he had absolutely no recollection of the incident and that his affidavit and admissions or discovery responses were prepared from how matters usually proceed. …" (Docket Item No. 184 at 2.) Further, "[t]he materials did not, in Plaintiff's view, adequately distinguish among facts within a witness's personal knowledge, facts reconstructed from contemporaneous records, and general descriptions of what normally or ordinarily should occur under institutional policy and procedure." (Docket Item No. 184 at 4.)

Relevantly, the Affidavit of Wood, admitted to evidence at trial as Plaintiff's Exhibit 2, states as follows:

> I do not specifically recall inmate Graham or this incident on October 5, 2023 in which he was transported to Lonesome Pine Hospital. However, records indicate that Graham was transported to Lonesome Pine Hospital at 11:55 a.m. on October 5, 2023 and Graham returned to Wallens Ridge at 4:32 a.m. on October 6, 2023 . . . In my capacity as the transportation sergeant, I would have assigned the officers for the transportation and Graham would have been transported without delay . . . I do not recall having any telephone conversations with the transporting officers regarding Graham or his care after they left the facility . . . If the treating physician at Lonesome Pine Hospital determined that Graham required transport to a specialist, Graham would have been transported without delay pursuant to those medical instructions . . . . Non-medical prison staff do not make decisions concerning an inmate's medical care. I have no knowledge that anyone, including Lt. Thompson, took action to delay Graham's medical treatment or transportation to a specialist.

(Docket Item No. 177-2 at 1–2.)

Similarly, the Affidavit of Thompson, admitted as Plaintiff's Exhibit 3, provides as follows:

---

requests for admission were not submitted to the case file before trial, but were exchanged only between the parties.

> I am aware that T. Graham was transported to Lonesome Pine Hospital after an incident at Wallens Ridge on October 5, 2023. Lonesome Pine Hospital is located approximately 5 minutes from Wallens Ridge State Prison. Records kept at this facility indicate that officers C. Collins and J. Turner were the transporting officers and they departed Wallens Ridge at 11:55 a.m. on October 5, 2023 and returned to Wallens Ridge [at] 4:32 a.m. on October 6, 202[3]. I do not recall talking with the officers after they departed Wallens Ridge, but policy requires that they provide updates to the facility watch commander, not me. Had hospital staff determined that Graham needed to be transported to another facility by ambulance, Virginia Department of Corrections security staff would not have interfered with or delayed that decision. Medical staff dictates decisions regarding an inmate's medical care and treatment, not security staff . . . . If hospital staff had determined that Graham needed to be transported by ambulance to a specialist, Wallens Ridge would have sent a third officer to the hospital. Policy requires that in this situation, three members of security staff need to be present for the transport, with two corrections officers riding on the ambulance with the inmate. One officer would ride in the front, one would ride in the back of the ambulance and the third officer would follow the ambulance in the VDOC security vehicle. When the inmate is released by medical staff and is returned to Wallens Ridge, the three officers and the inmate all ride back in the same vehicle. Wallens Ridge has a van that would accommodate the three officers and the inmate. With the hospital being 5 minutes from Wallens Ridge, there would have been no issue sending a third officer to Lonesome Pine Hospital to accommodate Graham being transported by ambulance . . . . I have no recollection of talking to the transporting officers while they were at the hospital with Graham. While it is normal to have some delays at the hospital waiting for the inmate to be seen by the doctor and the processing of paperwork, I have no knowledge that Graham's treatment was intentionally delayed by security staff. I personally took no action to prevent Graham from receiving necessary medical treatment and I have no reason to believe that any other Wallens Ridge staff acted to delay or "stall" Graham's medical care or his transport to Roanoke, Virginia, for specialized medical care. Roanoke is approximately 3 hours from Wallens Ridge.

(Docket Item No. 177-3 at 1–3.)

Further, Graham takes issue with certain responses to the requests for admission, which were admitted into evidence as Plaintiff's Exhibits 4 and 5. Specifically, Request No. 8 requests that the defendants admit "[t]hat Plaintiff was not transported to Carilion immediately following the physician's determination that such transfer was an emergency and necessary." (Docket Item Nos. 177-4 at 3, 177-5 at 3.) Wood and Thompson provided the following identical response:

> Deny. Plaintiff was transported to Carilion in accordance with what was ordered by the hospital. Plaintiff was transported as soon as hospital staff fully released him – having processed the necessary paperwork and being medically cleared to be transported. If by ambulance, Plaintiff would have been transported once the ambulance arrived. Defendant was not personally present or a part of the transport from Lonesome Pine to Carilion. Defendant is not aware of any delays that occurred in Plaintiff's transport to Carilion.

(Docket Item Nos. 177-4 at 3, 177-5 at 3.)

At trial, Graham states that Thompson testified that he had no recollection of the October 5, 2023, incident and that the Affidavit and admissions were prepared based on how events usually occur. He contends that this distinction was not clear to him until trial and, thus, interfered with his trial preparation. According to Graham, a new trial is warranted because he was deprived of the opportunity to "expose the distinction and develop responsive proof." (Docket Item No. 184 at 12.) Graham requests a new trial under Rule 59 of the Federal Rules of Civil Procedure and, alternatively, that the court vacate the judgment under Rule 60 of the Federal Rules of Civil Procedure. He further requests an evidentiary hearing and limited post-trial discovery.

II.

Under Rule 59 of the Federal Rules of Civil Procedure, courts "may grant a new trial only if the verdict: (1) is against the clear weight of the evidence; (2) is based upon false evidence; or (3) will result in a miscarriage of justice." *Ballard v.*

*Dozier*, No. 24-6621, 2026 WL 145596, at *1 (4th Cir. Jan. 20, 2026) (unpublished) (quoting *EEOC v. Consol Energy, Inc.*, 860 F.3d 131, 145 (4th Cir. 2017)). Furthermore, under Rule 60(b)(3) of the Federal Rules of Civil Procedure, courts "may relieve a party" from a "final judgment, order, or proceeding," for "fraud . . . , misrepresentation, or misconduct by an opposing party[.]" FED. R. CIV. P. 60(b)(3).

Here, the verdict form reflects that the jury did not find that Graham established by a preponderance of the evidence that Thompson was deliberately indifferent to Graham's serious medical needs on October 5, 2023, in violation of Graham's Eighth Amendment rights. (Docket Item No. 180.) Graham argues that the jury was misled where he was unable to expose the distinction between what actually happened on October 5, 2023, regarding his specific transport, and what routinely happens with prisoner transportation at the prison based on the defendants' discovery materials in conjunction with Thompson's testimony at trial.

Graham relies upon *Morgan v. Tincher* for the proposition that discovery misconduct that interferes with a party's ability to fully present his case warrants a vacation of judgment and new trial. Indeed, the court stated that "the proper inquiry under Rule 60(b)(3) is whether the judgment was 'unfairly procured' based on the withholding of discoverable material, and not whether the undisclosed material would have changed the outcome of the trial." *Morgan v. Tincher*, 90 F.4th 172, 180 (4th Cir. 2024) (quoting *Schultz v. Butcher*, 24 F.3d 626, 631 (4th Cir. 1994)). With that standard in mind, the court concluded that where a defendant failed to disclose evidence of a cumulative prior lawsuit during discovery, the plaintiff was unable to present evidence regarding that lawsuit; thus, the discovery misconduct "interfered with [the plaintiff's] ability to 'fully present[ ]' his case." *Morgan*, 90 F.4th at 180 (quoting *Schultz*, 24 F.3d at 630).

The case at bar is distinguishable. In *Morgan*, the defendant failed to disclose material evidence that may have helped the plaintiff "bolster" his case, which the

court determined amounted to misconduct under Rule 60(b)(3). *Morgan*, 90 F.4th at 179. Here, however, the defendants did not fail to disclose any particular evidence, and Graham does not point to any specific evidence that would have bolstered his case. Instead, Graham asserts that the evidence that was presented to the jury was a misrepresentation of what actually occurred on the date in question compared to what routinely occurs based on the prison's ordinary practices, and he could have revealed this issue had it been clear in the discovery materials.

The record simply does not support this contention. Upon a fair reading of the Affidavits of Thompson and Wood, which first were provided to Graham in November 2025, it is clear that they did not recall the specific incident involving Graham's transport to receive medical treatment. Rather, they both provided information regarding the ordinary course of procedures surrounding prisoner transports in order to declare that they have no reason to believe anything different would have occurred on October 5, 2023. Their responses to Graham's requests for admission likewise reflect their consistent position that they were not present for the transport but were aware of Graham's records and know how transport ordinarily would occur. Their testimony at trial echoed this sentiment. In fact, Graham asked for clarification regarding their recollection of that day on multiple occasions during trial, and the undersigned judge asked follow-up questions to ensure the distinction was clear to the jury. Both Thompson and Wood maintained in their testimony that they did not remember Graham or his specific transport but offered information regarding their usual role in prisoner transportation. It then was up to the jury to make any credibility determinations or factual inferences regarding what occurred during Graham's transport, and they were so instructed.

Ultimately, there is no indication that there was any discovery misconduct, that the facts of the case were misrepresented to the jury or that the judgment was procured by unfair means. Furthermore, a hearing is not necessary based on the

evidence already in the record. *See United States v. Smith*, 62 F.3d 641, 651 (4th Cir. 1995) ("Just as the district court has broad discretion in resolving a new trial motion, . . . so too does it enjoy discretion whether to hold an evidentiary hearing on the motion."). Therefore, I find that Graham's Motion has no merit, and he is not entitled to the relief he seeks.

III.

For the reasons stated, it is **ORDERED** that Graham's Motion, (Docket Item Nos. 184, 185), is **DENIED**.

The Clerk shall provide a copy of this Order to Graham, counsel for the defendants and the Fourth Circuit so that Graham's appeal may proceed.

**ENTERED:** September 16, 2026.

/s/ Pamela Meade Sargent

UNITED STATES MAGISTRATE JUDGE